## A. O. VOLD AND ANOTHER v. OSCAR M. HAGEN AND ANOTHER.[1]

December 17, 1920.

No. 21,936.

**Broker—action for commission—question for jury.**

> Action to recover a commission for the sale of a one-third interest in a stock of hardware and farm implements. Evidence considered and *held* sufficient to make a question for the jury, as to whether the plaintiffs' efforts were the procuring cause of the sale.

Action in the district court for Chippewa county to recover $450 as commission for making sale of an interest in a stock of hardware and farm machinery. The case was tried before Daly, J., who when plaintiffs rested denied defendants' motion to dismiss the action, and at the close of the testimony denied plaintiffs' motion for a directed verdict for $450 and defendants' motions for a directed verdict, and a jury which returned a verdict for the amount demanded. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*J. O. Haugland,* for appellants.

*Bert O. Loe,* for respondents.

QUINN, J.

The plaintiffs bring this action to recover a commission alleged to have been earned in bringing about a sale of a one-third interest in the firm property of the Maynard Hardware Company. They recovered a verdict. From an order denying their alternative motion for judgment or a new trial, defendants appealed.

To a clear understanding of the relations and conduct of the parties to this transaction, it is necessary to make a somewhat detailed statement of the facts leading up to the sale of Oscar M. Hagen's interest. Thomas Erickson and Ole G. Heen were engaged in the hardware and

[1]Reported in 180 N. W. 112.

implement business at the village of Maynard in this state, under the name and style of the Maynard Hardware Company. In Janaury, 1918, the defendant Oscar M. Hagen bought a one-third interest therein, his father, E. O. Hagen, assisting him with means. Oscar was a young man inexperienced in the business.

Discord arose between the partners. Oscar went to the plaintiff Mooney, who was employed in a lumber yard and engaged in the real estate business at Maynard, with his troubles. Mooney took the matter up and later went to see the other partners, for the purpose of bringing about a settlement of the difficulty. Nothing was accomplished. Matters grew worse for a time and Oscar again went to Mooney. They procured an inventory of the stock which had been used a few months before when Oscar bought into the firm. They then went to Oscar's father and A. O. Vold, who was a hardware merchant in town, for advice. The four talked the matter over and finally concluded that the best thing to do was to make Erickson and Heen an offer to buy or sell their interest in the firm property, at a certain per cent on an invoice basis, the invoice to be taken thereafter, and in that way to dispose of Oscar's interest.

There is testimony in the record to the effect that it was then agreed between E. O. Hagen, Vold and Mooney that, in case it became necessary to buy Erickson and Heen's two-thirds interest in the firm, they would go in together, raise the means therefor and run the business. At this stage of the procedure Exhibit A was executed, which is as follows:

"Maynard, Minn., April 24, 1918.

"It is agreed by and between Mr. E. O. Hagen and Oscar Hagen to pay Mr. O. A. Vold and M. Mooney $450.00 in case Mr. Ole Heen and Tom Erickson buy their share [of hardware] and building.

"Oscar M. Hagen,
"E. O. Hagen."

A meeting with Erickson and Heen was then arranged and the matter fully talked over. Erickson and Heen agreed to sell the new stock to be priced at 90 cents on the dollar, the fixtures at 50 cents on the

dollar, based upon an invoice to be made, and the building at $3,000, as per contract, Exhibit B, which is as follows:

"Maynard, Minn., April 25, 1918.

"This agreement made and entered into on this date between Tom Erickson and Ole Heen parties of the first part and M. Mooney party of the second part, witnesseth:

"The first parties agree to sell their interest in the Maynard Hardware Company, which is a two-thirds interest in the business on the following terms:

"$2,000.00 for their share of the real estate of the said firm.

"90 per cent of the late wholesale price of all new stock, machinery and repairs (for their ⅔ interest).

"50 per cent of the last invoice price of the fixtures (for their ⅔ interest).

"On all old stock the parties are to agree on the price it shall be invoiced, and on any stock that cannot be invoiced in that way, then M. Mooney shall choose a man and Erickson and Heen shall choose a man and these two shall choose another and they shall agree on the price of articles in dispute. Erickson and Heen are to pay off all claims against the share of the stock which they own, and the accounts to be taken over by the new firm at full value, provided the stocks are good.

"Tom Erickson and Ole Heen agree not to start into business again in the Hardware and Machinery business for the term of 5 years unless they buy an established business or unless the second party hereto quits the Hardware business.

"M. Mooney agrees to purchase the interest of Tom Erickson and Ole Heen on the above terms and to pay down the sum of $1,000.00 before the invoice is taken and the balance as soon as the invoice is finished.

"M. Mooney,
"Thos. Erickson,
"Ole G. Heen."

Mooney then resigned his position with the lumber company for the purpose of taking an inventory of the stock and assuming charge of the business as manager when the deal was consummated. An inventory was then taken which consumed several days' time. Erickson and Heen

required a deposit of $1,000 to insure the sale. The plaintiffs each deposited $500 in the bank for this purpose. When the parties came to close the deal, Erickson and Heen were not satisfied with some of the prices contained in the inventory, and did not want to allow any discount and the deal was not completed.

Mooney, Vold and the Hagens then consulted together and finally concluded to try to have a receiver appointed for the purpose of bringing about the sale of Hagen's interest, if possible. A lawyer was employed and a suit begun for that purpose, the plaintiffs assisting and advising therein. At the first hearing in court, the matter of adjustment of differences came up and the court continued the hearing for 20 days to allow the parties to adjust matters. Erickson and Heen, during the interim, purchased Hagen's one-third interest for $4,500, without saying anything to either Mooney or Vold. The contract, Exhibit B, was still in the bank with the $1,000 which plaintiffs had deposited to insure good faith on their part in carrying out the terms of the contract. The invoice amounted to about $18,000. Mooney had expended something over $50 in procuring an invoice of the stock.

Whether or not the bringing of the action to have a receiver appointed was, as Mooney testified, a part of his efforts to bring about the sale of Hagen's interest, was, under the testimony, in our opinion, a question for the jury. According to the testimony of Hagen the jury might conclude that the sale of his interest was the result of the suit for a receiver. Mooney testified that the suit was brought at his suggestion for that very purpose. If so, then it was for the jury to say whether the sale might have resulted therefrom. The sale was finally concluded through the efforts of Mr. Shand, who had been appointed by the court in the receiver proceeding to examine the books of the firm. There was testimony to the effect that Mooney refused to consider the proposition of paying $9,000 for a two-thirds interest in the firm and assuming its obligations. Whether that fact had a tendency to affect the sale of defendant's interest was also a matter for the jury to consider.

Affirmed.

HOLT, J. (dissenting).

I do not think the evidence is sufficient to show that plaintiff was the procuring cause of the deal.

DIBELL, J. (dissenting).

I agree with Justice Holt.